UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BILLY KELLEY,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

    Defendant.

No.  1:16-CV-03025-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF REMAND FOR FURTHER PROCEEDINGS**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 14. Mr. Kelley brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Disability Insurance Benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court

**GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** for additional proceedings consistent with this order.

## I.    Jurisdiction

Mr. Kelley filed for Disability Insurance Benefits on November 1, 2012, AR 172, and Supplemental Security Income on November 13, 2012. AR 179.  His alleged onset date is March 14, 2010. AR 172, 179. Claimant asked to revise this date at the administrative hearing to July 19, 2012, his 50th birthday. AR 37. Mr. Kelley's application was initially denied on January 11, 2013, AR 107-115, and on reconsideration on April 10, 2013, AR 118-130.

A hearing with Administrative Law Judge ("ALJ") Mary Gallagher Dilley occurred on June 4, 2014. AR 34-66. On August 28, 2014, the ALJ issued a decision finding Mr. Kelley ineligible for disability benefits. AR 18-33.  The Appeals Council denied Mr. Kelley's request for review on February 11, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Kelley timely filed the present action challenging the denial of benefits, on February 24, 2016. ECF No. 3. Accordingly, Mr. Kelley's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

1  mental impairment which can be expected to result in death or which has lasted or

2  can be expected to last for a continuous period of not less than twelve months."  42

3  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

4  under a disability only if the claimant's impairments are of such severity that the

5  claimant is not only unable to do his previous work, but cannot, considering

6  claimant's age, education, and work experience, engage in any other substantial

7  gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

8  1382c(a)(3)(B).

9      The Commissioner has established a five-step sequential evaluation process

10  for determining whether a claimant is disabled within the meaning of the Social

11  Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

12  *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

13      Step one inquires whether the claimant is presently engaged in "substantial

14  gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

15  activity is defined as significant physical or mental activities done or usually done

16  for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

17  substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

18  404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

19      Step two asks whether the claimant has a severe impairment, or combination

20  of impairments, that significantly limits the claimant's physical or mental ability to

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 3**

do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 &

416.908-09.  If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are

required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe

impairments "meets or equals" one of the listed impairments acknowledged by the

Commissioner to be sufficiently severe as to preclude substantial gainful activity.

20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or

equals one of the listed impairments, the claimant is *per se* disabled and qualifies

for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to

the fourth step.

Step four examines whether the claimant's residual functional capacity

enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f)

& 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant

is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is

able to perform other work in the national economy, taking into account the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS ~ 4**

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9ᵗʰ Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Mr. Kelley was 48 years old at the original alleged date of onset. AR 27. He has completed the 11th grade of high school and has not earned his GED. AR 401. Mr. Kelley has obtained his commercial driver

license ("CDL"). AR 43, 202. The ALJ found Mr. Kelley to suffer from right knee degenerative joint disease, asthma, bunion deformity status post repair, possible achilles spur, hepatitis C, and hallux valgus. AR 23. He also has a history of marijuana and other drug use. AR 26, 42-43, 385, 401.

Mr. Kelley previously worked as a truck driver, wood cutting laborer, and production lead man window assembler. AR 27, 210.

## V.    The ALJ's Findings

The ALJ determined that Mr. Kelley was not under a disability within the meaning of the Act from March 14, 2011, through the date of the ALJ's decision. AR 29.

**At step one**, the ALJ found that Mr. Kelley had not engaged in substantial gainful activity since March 14, 2011 (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*). AR 23.

**At step two**, the ALJ found Mr. Kelley had the following severe impairments: right knee degenerative joint disease, asthma, bunion deformity status post repair-right, possible achilles spur, hepatitis C, and hallux valgus (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). *Id.*

At **step three**, the ALJ found that Mr. Kelley did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 24.

At **step four**, the ALJ found Mr. Kelley had the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with these exceptions: (1) he can lift up to twenty pounds occasionally and lift or carry ten pounds frequently; (2) he can stand or walk approximately six hours in an eight-hour workday; (3) he can sit approximately six hours; (4) he can occasionally climb ladders, ropes, and scaffolds; (5) he can frequently climb ramps and stairs; (6) he can frequently stoop, kneel, crouch, and occasionally crawl; and (7) he should avoid concentrated exposure to fumes, odors, dusts, and gases. AR 24.

The ALJ determined that Mr. Kelley is unable to perform any of his past relevant work. AR 27.

At **step five**, the ALJ found that, in light of his age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that he can perform. AR 28.

## VI.    Issues for Review

Mr. Kelley argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly considering the opinion evidence of ARNP Ms. Rutter, the medical opinion evidence of Dr. Pellicer, Dr. Cardon, Dr. Hurley, and Dr. Hale; and (2) improperly rejecting Mr. Kelley's subjective complaints and lay testimony.

## VII.   Discussion

**A. The ALJ failed to properly consider some of the opinion evidence.**

**1.  The ALJ properly rejected the opinion of Amelia Rutter, ARNP.**

As a nurse practitioner, the opinion of Ms. Rutter falls under the category of "other sources." These other sources include opinions from nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

In her decision, the ALJ afforded "little weight" to Ms. Rutter's opinion that Mr. Kelley could perform sedentary work and would miss four days or more per month. AR 27. The ALJ opined that "Ms. Rutter provided no findings to support her opinion, and her opinion is not consistent with her treatment notes as detailed above." *Id*.

In her three-page questionnaire response in 2013, comprised of a check list and limited references to Mr. Kelley's symptoms, Ms. Rutter cited no clinical

1    support for her opinion about Mr. Kelley's limitations. AR. 27, 325-27. An ALJ

2    may discount an opinion when it is "inadequately supported by clinical findings."

3    *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, the overall

4    medical record, including the treatment notes from Yakima Neighborhood Health

5    Services where Ms. Rutter worked, are inconsistent with Ms. Rutter's opinion

6    regarding Mr. Kelley's limitations.

7         Ms. Rutter attributed significant limitations to Mr. Kelley's foot pain and

8    bunion, AR 325; however, the record directs that Mr. Kelley's foot pain was

9    getting better, he was walking more, he had a full range of motion and normal

10   motor and sensory exams in his right foot, and Ms. Rutter noted that the bunion

11   and right foot were stable. AR 313, 315, 333, 343, 351. Ms. Rutter opined that Mr.

12   Kelley suffered from joint pain that contributed to her opinion of drastic

13   limitations. AR 325. The record demonstrates that in 2014, Mr. Kelley reported no

14   problems with his bones or joints and no muscle weakness, he had a full range of

15   motion, and a few months prior to the hearing, Ms. Rutter noted that Mr. Kelley's

16   physical exam was normal. AR 377, 381, 383.

17        Importantly, if the evidence in the record "is susceptible to more than one

18   rational interpretation, [the court] must uphold the ALJ's findings if they are

19   supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

20   F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954

(9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Accordingly, as the Ninth Circuit has held, an ALJ may discount an "other source" opinion, such as Mr. Rutter's, so long as there were "reasons germane to [her] for doing so." *Molina*, 674 F.3d at 1111. The germane-reasons standard imposes a minimal obligation on the ALJ. *See, e.g., Adams v. Astrue*, No. 08-1449, 2010 WL 761239, at *3 n.2 (C.D. Cal. Mar. 1, 2010) (describing standard as "low"). The ALJ properly discounted Ms. Rutter's opinion and satisfied this standard.

## 2. The ALJ improperly rejected the opinions of some of the doctors in the record.

### a. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the

absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b.  The ALJ properly rejected the opinion of Dr. Mary Pellicer, M.D.

Dr. Pellicer was an examining doctor. Dr. Pellicer's opinion regarding Mr. Kelley's limitations is contradicted by Gordon Hale, M.D., a state agency medical consultant. AR 85-94. Thus, as there does exist contrary opinion, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence in the record" in order to reject Dr. Pellicer's opinion. *Lester*, 81 F.3d at 830-31. This required that the ALJ include "a detailed and thorough

1    summary of the facts and conflicting clinical evidence, stating h[er] interpretation

2    thereof, and making findings." *Magallanes*, 881 F.2d at 751.

3        On July 1, 2014, examining physician Dr. Pellicer conducted an evaluation

4    of Mr. Kelley. AR 390-405. Dr. Pellicer provided numerous functional limitations

5    based on her examination of Mr. Kelley. *Id*. The ALJ gave "little weight" to the

6    opinion, including specific functional limitations and that Mr. Kelley must be

7    limited to sedentary work. AR 27. The ALJ reasoned that these limitations are

8    consistent with Dr. Pellicer's examination findings, but that Dr. Pellicer's

9    examination is significantly different from prior examinations. *Id*.

10       For example, after examining Mr. Kelley, Dr. Pellicer found that he could

11   not lift more than ten pounds and was limited to occasional manipulation. AR 405.

12   However, the ALJ correctly states that the record demonstrates that on repeated

13   occasion, Mr. Kelley had normal examinations with full motor strength in all of his

14   extremities, intact balance and gate, and no (or only slight) muscle weakness; and

15   normal sensory exams. AR. 26, 264-65, 268, 271, 275, 296, 315, 381, 383, 386. In

16   addition, Dr. Pellicer observed Mr. Kelley walk slowly favoring the right side,

17   medical records documented Mr. Kelley's gait, station, and coordination as intact

18   and normal. AR 26, 275, 307, 367, 383, 404. The record also showed that Mr.

19   Kelley was routinely in no acute distress on examinations, and in 2014, he denied

20   muscle weakness and did not report any bone or joint problems. AR 26, 275, 296,

382, 386. The ALJ's decision details these discrepancies that undermined Dr.

Pellicer's opinion. AR 26-27.

While, the record also contains some evidence that supports Dr. Pellicer's

opinion, the ALJ is the "final arbiter" with regard to medical evidence ambiguities,

including differing physicians' opinions. *Tommaetti*, 533 F.3d 1035, 1041 (9th Cir.

2008). The ALJ's analysis is a rational interpretation of the medical evidence and

the ALJ provided specific and legitimate reasoning for giving Dr. Pellicer's

opinion little weight. The Court will not disturb a finding if it "is susceptible to

more than one rational interpretation . . . supported by inferences reasonably drawn

from the record." *Molina*, 674 F.3d at 1111.

### c.  The ALJ improperly failed to consider the medical opinion of Dr. Wayne E. Hurley and possibly the medical opinion of Dr. Stuart Cardon.

An "ALJ must consider all medical opinion evidence." *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The

Ninth Circuit has held that "[w]here an ALJ does not explicitly reject a medical

opinion or set forth specific, legitimate reasons for crediting one medical opinion

over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see*

*also Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996). Furthermore, as noted

above, an ALJ may reject a treating source's opinion that is contradicted by another

1  doctor's opinion only by "providing specific and legitimate reasons that are

2  supported by substantial evidence." *Lester*, 81 F.3d at 830-31.

3      Importantly, harmless error analysis applies in assessing impact of ALJ's

4  failure to mention treating physician or his clinical progress notes before rejecting

5  claimant's application for social security disability insurance benefits. *Marsh v.*

6  *Colvin*, 792 F.3d 1170, 1172–74 (9th Cir. 2015). "ALJ errors in social security

7  cases are harmless if they are 'inconsequential to the ultimate nondisability

8  determination' and that 'a reviewing court cannot consider [an] error harmless

9  unless it can confidently conclude that no reasonable ALJ, when fully crediting the

10 testimony, could have reached a different disability determination.'" *Id*. (quoting

11 *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006);

12 *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). The more serious the error,

13 the more difficult it would be to show the error was harmless. *Marsh*, 792 F.3d at

14 1172–74.

15     The Ninth Circuit has held, that where an ALJ failed to explicitly consider

16 testimony of a doctor was harmless error, as the testimony was cumulative of other

17 medical evidence and testimony and the mistake was nonprejudicial to the

18 claimant. *Reed ex rel. Reed v. Astrue*, 336 F. App'x 611, 612 (9th Cir. 2009).

19 However, in reviewing the denial of social security benefits, a "court may not

20 make independent findings based on the evidence before the ALJ to conclude that

1  the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. That is, a district

2  court may not find an error harmless by affirming the ALJ on a ground not invoked

3  by the ALJ, and is constrained to review only the reasons the ALJ asserts. *Connett*

4  *v. Barnhart*, 340 F.3d 871, 874 (9th Cir.2003). As such, a reviewing court

5  generally cannot confidently conclude that an error was harmless without some

6  comment by the ALJ on a physician's medical opinion and records. *Marsh*, 792

7  F.3d at 1172.

8      Here, both Dr. Hurley, and possibly Dr. Cardon, expressed medical opinion

9  as to Mr. Kelley's disability; to which the ALJ made no comment.

10     Dr. Hurley, a non-examining doctor, reviewed Mr. Kelley's medical records

11  on December 30, 2013. AR 365. Dr. Hurley recommended a continued disabled

12  status and provided severity and functional limitations for Mr. Kelley. *Id*. The ALJ

13  "need not accept the opinion of any physician, including a treating physician, if

14  that opinion is brief, conclusory, and inadequately supported by clinical findings."

15  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*

16  *v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Hurley's opinion consists only

17  of a brief, one page, document. AR 365. However, the ALJ failed to mention Dr.

18  Hurley's notes at all in her written decision. As the ALJ did not specifically

19  mention or reject the medical opinion of Dr. Hurley the ALJ erred. In the

20

1  circumstances of this case, where the ALJ did not even mention Dr. Hurley's

2  opinion the Court cannot confidently conclude that the error was harmless.

3       Dr. Cardon was a treating doctor. AR 350-59. Mr. Kelley argues that the

4  Physical Functional Evaluation, AR 360-64, is the direct opinion of Dr. Cardon

5  regarding the disability status and severity of Mr. Kelley's limitations. ECF No. 13

6  at 17. This brief Physical Functional Evaluation, created in 2013, opines that Mr.

7  Kelley is severely limited, that is unable "to perform one or more basic work-

8  related activities" for a period of two months. AR 361-64. This report is

9  remarkably brief and conclusory, the two month duration of disability in 2013 has

10 likely run its course, this evidence is cumulative of other opinion evidence, and

11 most importantly, it is unclear who actually created the record as there is no printed

12 name and only an illegible signature on the document. However, the ALJ gave no

13 reasons for not mentioning this medical opinion report; that was error. Because the

14 ALJ gave no reason for not mentioning the medical opinion, this Court cannot

15 confidently conclude that this error was harmless absent some comment by the

16 ALJ.

17      The ALJ improperly failed to mention this medical opinion in assessing Mr.

18 Kelley's impairments and the severity of the impairments without comment. This

19 error is not harmless because it cannot be considered inconsequential to the

20 determination of disability. *Molina*, 674 F.3d at 1115. In reviewing denial of a

1  social security benefits application, a court will leave it to the ALJ to determine

2  credibility, resolve conflicts in testimony, and resolve ambiguities in the record.

3  *Brown-Hunter,* 806 F.3d 487. Thus it is appropriate to remand to the ALJ, for the

4  ALJ to determine the authorship of the opinion found at pages 360-64 of the

5  Administrative Record, and consider, and comment on, the ignored medical

6  opinions.

7  **d. The ALJ properly considered the opinion of Dr. Gordon Hale,**

8  **M.D.**

9  Dr. Hale was a non-examining doctor. The ALJ afforded "great weight" to

10  the opinion of Dr. Hale. AR 27. "Great weight" was also afforded, in the same

11  section, to the opinion Dr. Tracy Stephens that corroborates Dr. Hale's opinion

12  regarding Mr. Kelley's limitations and functioning capacity. *Id.*; AR 69-75, 85-94.

13  The findings of Dr. Hale recommend limitations consistent with the RFC

14  determined by the ALJ. AR 24, 90-93. The ALJ reasoned that these findings by Dr.

15  Hale and Dr. Stephens were consistent with the record, particularly Mr. Kelley's

16  reported activities. AR 27.

17  Mr. Kelley argues that the ALJ erred in affording great weight to the opinion

18  of Dr. Hale because Dr. Hale is a reviewing doctor, Dr. Hale did not review notes

19  of the non-medical opinion of Ms. Rutter (properly discounted by the ALJ) made

20  after Dr. Hale gave his opinion, and argues that Dr. Hale was "completely unaware

of Mr. Kelley's major bunion impairment," even though Mr. Kelley's bunion is mentioned by Dr. Hale. ECF NO. 13 at 16-17; AR 85.

When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007). In general, more weight is given to an examining medical source's opinion than to the opinions of those who do not treat or examine the claimant. *Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of even a treating physician, if that opinion is inadequately supported by clinical findings or by the record as a whole. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.2004). Furthermore, opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ did not err in giving more weight to the opinion of non-examining and non-treating Dr. Hale over the opinion of examining physician Dr. Pellicer. As stated above, the ALJ gave "specific and legitimate" reasons for giving less weight to Dr. Pellicer's opinion, including that it was inconsistent with the

1    record and other examinations. *Supra* 13. These reasons were supported by

2    substantial evidence in the record. *See id.*

3           Additionally, the opinion of Dr. Hale in this case, is consistent with the

4    objective medical evidence in the record as a whole, and supports the ALJ's denial

5    of benefits. For example, Dr. Hale opines that Mr. Kelley can perform light work,

6    occasionally lift 20 pounds, frequently lift 10 pounds, and stand and sit for six

7    hours in an eight hour workday. AR 90-93. The record demonstrates that Mr.

8    Kelley had normal examinations with full motor strength in all of his extremities,

9    intact balance and gait, and no (or only slight) muscle weakness; and normal

10   sensory exams. AR. 26, 264-65, 268, 271, 275, 296, 315, 381, 383, 386. Medical

11   records documented Mr. Kelley's gait, station, and coordination as intact and

12   normal. AR 26, 275, 307, 367, 383, 404. The record also showed that Mr. Kelley

13   was routinely in no acute distress on examinations, and in 2014, he denied muscle

14   weakness and did not report any bone or joint problems. AR 26, 275, 296, 382,

15   386. Further, the findings by Dr. Hale are consistent with other evidence in the

16   record—specifically, Mr. Kelley's statements about his daily activities of engaging

17   in vigorous physical activity 1-2 times per week, going on walks, doing yard work,

18   pulling weeds, building a garden fence, vacuuming, and making his bed. AR 26,

19   58, 219, 350.

20

1   The ALJ is the "final arbiter" with regard to medical evidence ambiguities,

2   including differing physicians' opinions. Tommaetti, 533 F.3d 1035, 1041 (9th Cir.

3   2008). The ALJ properly assessed Dr. Hale's opinion, and the weight assigned to

4   Dr. Hale's opinion is supported by substantial evidence in the record. The Court

5   will not disturb a finding if it "is susceptible to more than one rational

6   interpretation . . . supported by inferences reasonably drawn from the record."

7   Molina, 674 F.3d at 1111.

8   **B. The ALJ properly discounted Mr. Kelley's credibility.**

9   An ALJ engages in a two-step analysis to determine whether a claimant's

10  testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

11  F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

12  medical evidence of an underlying impairment or impairments that could

13  reasonably be expected to produce some degree of the symptoms alleged. *Id.*

14  Second, if the claimant meets this threshold, and there is no affirmative evidence

15  suggesting malingering, "the ALJ can reject the claimant's testimony about the

16  severity of [his] symptoms only by offering specific, clear, and convincing reasons

17  for doing so." *Id*.

18  In weighing a claimant's credibility, the ALJ may consider many factors,

19  including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

20  reputation for lying, prior inconsistent statements concerning the symptoms, and

1  other testimony by the claimant that appears less than candid; (2) unexplained or

2  inadequately explained failure to seek treatment or to follow a prescribed course of

3  treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When

4  evidence reasonably supports either confirming or reversing the ALJ's decision, the

5  Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

6  F.3d 1094, 1098 (9th Cir.1999). "General findings are insufficient: rather the ALJ

7  must identify what testimony is not credible and what evidence undermines the

8  claimant's complaints." *Lester*, 81 F.3d at 834.

9       Here the ALJ ultimately found that Mr. Kelley is limited to a range of light

10  work. However, the ALJ provided two valid reasons for discounting Mr. Kelley's

11  credibility.

12       **1. Inconsistency with the record.**

13       The ALJ asserted that Mr. Kelley's statements regarding his functioning are

14  inconsistent. AR 25-26. For example, Mr. Kelley stated that he could only stand

15  continuously for 15 minutes due to foot pain and weakness. AR 50-51. However,

16  the record directs that diagnostic testing of Plaintiff's feet showed, at most, modest

17  abnormalities (including a bunion that improved), AR 280, 313, 333, 343. Mr.

18  Kelley reported that his ankle and foot pain were "getting better," AR 266. In

19  addition, Mr. Kelley exhibited no skeletal tenderness or deformity and, despite

20

some "moderate pain" in his left ankle and foot, had a full range of motion in his

right foot, and a normal motor and sensory exam. AR 26, 265.

Mr. Kelley's complaints about feeling too weak are also inconsistent. AR

53. Medical records from January 2014 showed that he had no muscle or motor

weakness. AR 381-83. Mr. Kelley further claimed that he could not walk at a

normal pace. AR 50-52. But on often his gait, station, and coordination were intact.

AR 26, 275, 307, 367, 383. Notably, in April 2014, a few months before the

hearing in this case, Mr. Kelley's physical examination was normal. AR 377.

Notably, Mr. Kelley previously denied muscle weakness. AR 26, 381.

The Court does not find the ALJ erred when assessing Mr. Kelley's

credibility because his statements regarding his symptoms are inconsistent.

**2.  Mr. Kelley's daily activities.**

Mr. Kelley's statements regarding his debilitated functioning are not

consistent with the record. The ALJ noted several activities of daily living that are

inconsistent with Mr. Kelley's allegations of the level of his impairment. In

particular, his daily activities of engaging in vigorous physical activity 1-2 times

per week, going on walks, doing yard work, fixing meals, vacuuming, and making

his bed. AR 26. These activities are inconsistent with someone that alleges

disabling foot pain, hand pain, joint pain, and muscle weakness.

1    In addition, the record shows other activities that are inconsistent with his

2  reported disabling pain. For example, Mr. Kelley reported that in addition to doing

3  yardwork, he built a fence, planted a garden, and pulls weeds. AR 58, 219.

4    The Court does not find the ALJ erred when assessing Mr. Kelley's

5  credibility because his activities of daily living are inconsistent with his alleged

6  physical impairments.

7  **C. Remedy.**

8    The Court has the discretion to remand the case for additional evidence and

9  findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award

10  benefits if the record is fully developed and further administrative proceedings

11  would serve no useful purpose. *Id.* Remand is appropriate when additional

12  administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d

13  759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are

14  necessary for a proper determination to be made.

15    On remand, the ALJ shall determine the authorship of the opinion located at

16  pages 360-64 of the Administrative Record, and consider this opinion, as well as

17  the opinion of Dr. Hurley. Once considering these opinions, the ALJ shall

18  recalculate the residual functional capacity, considering all impairments, and then

19  evaluate, based on this updated residual functional capacity, Mr. Kelley's ability to

20  perform past relevant work, as well as work available in the national economy.

# VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED, in part.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 14,** is **DENIED.**

3.  The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 27th day of October, 2016.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge